Appellant, Ms. Dyer for the Appellant, Ms. Heffernan for the Appellee. Ms. Dyer, good morning. Good morning and may it please the Court, I'd like to reserve three minutes for rebuttal. A police officer's right to enter the home of the subject of an arrest warrant is not absolute. Instead, that right is qualified. If, in contrast, a warrant authorizes a search of the home rather than the seizure of a person, then the officer's entry into the home is requisite to, it is indispensable to, the officer's execution of the warrant. That same necessity is not inherent in the execution of an arrest warrant. That is clear from the Court's decision in Payton where the Court recognized two limits, at least two limits, on an officer's authority to enter with an arrest warrant. First, the officers must have a reasonable belief that the subject is within the home. But if the subject is already standing at the door, then the subject is not within the home's interior. If the subject is standing at the door, the officers have no further reason to look for what they are looking to find. They have already found what they need to find at the threshold. And in addition, the Court also limited the authority to enter or expressed another limitation on the authority to enter. It did not outline exactly what that limitation was, but there was no reason to state another limitation if it was not, in fact, an additional one. What limitation could that be but the Fourth Amendment? And what right is more fundamental in these circumstances than the right to the privacy in the home and the right not to have the officers open the door with a key, which is what happened here. So in this case, the moment the officers used that key to open the door, they crossed the threshold and broke the threshold. And that was the Fourth Amendment violation that occurred in this case. Here, the knock-and-announce requirement also served to protect privacy in the home. And the Supreme Court's individual privacy is affected by the knock-and-announce requirement. So the Court's identification of three interests protected by that requirement in Hudson was not a statement of every possible interest that the requirement could protect. And in fact, the Court's citation of cases in Hudson primarily focused on warrantless searches and entrances with a search warrant. The Court also cited Wilson v. Arkansas, in which the knock-and-announce requirements are, in fact, a Fourth Amendment consideration. And so in Wilson, the Court recognized both that knock-and-announce requirements are a Fourth Amendment violation and that if officers fail properly to knock-and-announce, their entry into the home is unconstitutional and unreasonable, absent countervailing circumstances, which were not present here. In Acorino, in this Court's case, this Court recognized, first of all, recognized that the exclusionary rule does protect officers' incentives. Let me just stop you because I want to be sure. The violation here is the failure to announce the purpose. The real violation is when the officers open the door with a key. Well, that's what I thought I heard you say. But the violation, all right, so why is that violation separate and, I mean, not contingent on the failure to announce the purpose? Well, had the officers announced their purpose, then it would have given Mr. Weaver a chance to surrender at the door. And that is why the announcement of the purpose was so critical in this case. But it was the officers' breaking of the threshold to enter the home, thereby searching the home, that was... Well, they weren't moving inside, right? But they did not suggest that any of that movement was anything in particular or even suspicious remotely. There's nothing in the record to suggest that they believed that that movement meant anything at all. So it was the moment that they turned the door with the key that they broke the threshold. The warrant did not authorize them to do that. Now, the court has recognized that the officers do not need a separate search warrant when they are entering the home of the subject of their arrest warrant. But the limitations on that, the use of that warrant to break the threshold, require that an announcement be made and that the individual inside be given an opportunity to surrender at the door. Justice White recognized this in his dissent in Payton, when twice he said at page 617, that's 445 U.S. at 617, he said that the knock-and-announce requirements allow the arrestee to surrender at his front door, thereby maintaining his dignity and preventing the officers from entering other rooms in the dwelling. And then at 618, he also says there is no danger that the officers would use their entry power as a pretext to justify an otherwise invalid arrest. If the suspect surrenders... Ms. Dyer, how clear is the record here that the door could have been opened and the suspect surrendered himself without the officers thereby having smelled what they describe as a strong odor of fresh marijuana or glanced over his shoulder and seen even from outside the threshold the drugs that gave them... The officer testified that he smelled the marijuana when he entered. And he testified that he looked to the left and saw marijuana in the kitchen. So that does not suggest that he could see it from outside the door. Nothing in the record suggests that he could have detected marijuana in any way from outside the door. If we were to agree with you, would the appropriate order be for us to remand and give the government an opportunity to establish facts relating to whether they would have seen or smelled from outside the threshold? That would expand the remand history of this court far further than it has ever done before. The court often does remand for further factual findings by the district court. And that does not necessarily limit, I believe, the court to the existing record. But this court doesn't do that unless the district court has failed to make factual findings. Well, the district court signaled that she was going to apply Hudson and there was no point in doing any factual finding on issues that are raised by the potential inapplicability of Hudson. So wouldn't that explain why there's no record? It wouldn't have occurred to the government to make a record on those questions if they think, well, Hudson applies here. If this court were to do that in this case, then why doesn't it do that in almost every search case where perhaps officers could testify to more evidence? Typically this court, if the record is insufficient, invalidates or reverses the district court's denial of the record. And the record goes back and the evidence is suppressed. In what cases are you thinking about? Virtually all the cases in which the court does not remand for further findings. Right. But here we have this threshold legal inquiry that's going to shape the landscape. That's not really the typical configuration. I don't have those cases at my fingertips, but I believe there are many cases in which it would be possible for officers to testify to more. And this court does not remand for further factual findings to allow them to do that. And your principal basis for distinguishing Hudson is that in Hudson, one of the factors that the court relied on was that the residents did not have a reasonable expectation of privacy in the very items and space that were the subject of a search warrant. And here you're saying that the resident retains the reasonable expectation of privacy in the home because that's not the subject of the search warrant, except to the extent necessary to get the suspect under custody. That's correct. And that's what was recognized in Stiegel, that the magistrate, there has been an independent judicial finding in this case that the officers have authority, they have probable cause to make an arrest. There has been no independent judicial finding that there is anything suspicious in the home or any justification for searching the home. So the officer's entry into the home, that's why the entry itself forms a constitutional violation. And I believe this court did hold that that type of entry without announcement in Acorino was a Fourth Amendment violation and required suppression. But it is that entry that had no independent judicial finding to justify it. So, yes, it is that distinction. And I think, as I read Hudson, I believe that the court's real rationale was the officers already had an independent judicial finding to search. I'm not saying that that was inevitable because inevitability finding is something slightly different, but it is that there was already an independent judicial finding that the officers were going to get in the house and search for evidence. And so the fact that they made the entrance, the fact that they didn't wait more seconds before making the entrance seemed less significant to the court. But in this case, there has been no individual judicial finding or independent judicial finding of a right to enter. And so the entrance itself is more significant and is a violation of the suspect's privacy in the home, which the suspect does retain in the face of an arrest warrant. If the suspect were out in the hallway, there would be no reason to enter the apartment. It sounds like your position is maybe pushing the cases a little bit further in the sense that you're saying that the arrest warrant privileges the officers to enter the home only to the extent necessary to take the suspect into custody and that anything they do that oversteps the bare minimum of home intrusion that is necessary. So we're going to have a lot of inquiry into the extent of the entry and whether it exceeds necessity, whether it exceeds necessity. And the court amendment inquiries do go into these types of specifics. And the real question here is, was the officer's entry reasonable under these circumstances? We don't have exigent circumstances. So we know, I mean, the court could send the case back for further factual findings on whether there was any exigency possibly. But I don't, there's nothing in the record now that suggests any exigency, and I don't think the court has ever done that kind of thing before. So it's a question of when they are standing at the door, if they've made the proper announcement, which they are required to make based on historical precedent, you know, far back into the 12th century and maybe 13th century, but, and whether they've, you know, if the suspect does not answer, then we recognize they have a right to enter then. They have a right to break. They have a right to cross the threshold. But if the suspect... And the defect here is really that they failed to announce their purpose more so than the timing. Right. Well, the timing... And if they had announced their purpose, your position is, oh, they only want me. They don't want to come in, and he wouldn't have struggled against the police pushing against the door. At least you're entitled to the assumption that that might be the case. Well, he didn't push against the door until they opened it with a key. He had a right when they knock and announce police, even if he believes that they are police, to ignore them. At that point, he has no obligation to answer the door. So he's pushing on the door after they open it, and he, you know, at that point, he just has no idea. If this is a two and a half year old warrant, that they might be coming for him with a search warrant. And what do they have to say? Police warrant or police warrant for the arrest or police warrant for the arrest of Mr. Weaver? Well, that's a good question, and I don't know that this court has to answer it because here they didn't say warrant at all. And if they said warrant, is that enough? Well, I think that that... Or arrest warrant. I think that, you know, I don't know that I have cases saying that there has to be arrest warrant, but I think they do need to say arrest warrant because I think that at that point, the people inside... That would have to be a position, right? Yes, and they have to express, once somebody does answer the door, so they have a right to require somebody to open the door with a warrant. We know that they have that right. But when somebody opens the door, they do have an obligation to explain who the warrant is for so that that person, if it's a guest or if it's a child, that somebody can call somebody to come to the door and protect everybody else's privacy in the house. And then that person can surrender, at least has an opportunity to avoid having police come in the house. So in terms of the circumstances in which police might otherwise enter, I think that is a question that boils down to what is a reasonable entry under various circumstances. And we know at least here that there was no exigency. And we don't have any record on what would have happened, and I don't think the police officers could even testify as to what would have happened had he opened the door and put his hands across the threshold of the door and said... Or stepped outside. Or stepped outside. But even if they were standing in the way so they couldn't step outside, he could have put his hands through the door and said, here, handcuff me. I don't need clothes. I will accompany you. And at that point, what obligation do they have? Or what right do they have, then, to violate his privacy? Which is a whole other right that he maintains. Is that enough to distinguish Hudson? I mean, there was a lot else in Hudson about the utility of the cost-benefit of the exclusionary rule and the other interests served by knocking an ounce that exclusion would not advance. All of which seem identical in your case. Well, the deterrence of the police officers is not identical. And Justice Scalia's other considerations are things like potential violence if the police wait too long. But that kind of flies in the face of potential violence if they barge in. And I think that the... They crossed that bridge in Hudson. Potential violence if they barge in was there, too. It's in every case. But I think it's a police officer's individual judgment. Is it more... Is it risky to barge in? In which case, they can apply for a no-knock warrant. Or is it more risky if they wait a minute or two and then enter? Allowing people, perhaps, to arm And the other is the flooding litigation, which courts had been dealing with for decades as to how many seconds were enough. And similar types of knock-and-announce litigation, which is true for many Fourth Amendment considerations. And the knock-and-announce is one of them. But I do think that deterrence... On the deterrence question, the arrest warrant is very different. Because it allows the officers to get in the house and see things they wouldn't otherwise have seen as occurred here. All right. We'll give you a couple minutes. The Court has no further questions. Thank you very much. Ms. Heffernan. Good morning. May it please the Court. Good morning. Appellant's argument rises and falls on his reading of Payton. And that reading is incorrect. Payton... In the 35 years since Payton, the Supreme Court decided Payton, no court, as far as we are aware, has read into Payton the type of limitation that Appellant is asking this time. Payton authorizes the limited authority of the police officers to enter the home to make the arrest. There's nothing in Payton that says that this entire process needs to precede that entry. That the officers not only need to knock-and-announce, but to have conversations about, does this person want to come out? Do they want to step across the threshold? Should we step into the home? None of that is in Payton. No court has ever understood Payton to be limited in that way. The limited necessity of Payton is what the police can do when they enter the home. And that's arrest the home. Arrest the subject of the warrant. I also wanted to point out that Payton was decided before Bowie. And so the comments in Payton in the dissent about what can occur when the police execute a warrant are now also subject to Bowie. Bowie permits the police to do a sweep for third parties of the area immediately adjacent to the site of arrest. That isn't what was going on here. They weren't doing a protective sweep. That's correct. But I wanted to point out that the comments in the dissent in Payton need to be consideration with respect to the deterrence. Appellant argues that the deterrence stakes are higher in an arrest warrant setting because he contends that if the arrest takes place at the threshold, that's the end of the story. But actually under Bowie, if the arrest takes place at the threshold, they get a sweep of the immediate area adjacent to the site of the arrest. But you understand the concern. The concern is unlike in a search warrant situation where the resident's expectation of privacy in his or her home is trumped by the warrant supported by probable cause. Here you have a situation where somebody, this guy, he's a suspect long being sought by the police and he's got family maybe and his kids are sitting having breakfast with him and the police come to the door. There's a lot of privacy interest. Other people who live in the house, you might not want to be seen being handcuffed in front of your elderly parents, in front of your spouse, in front of your children. You might want to protect other people, your roommates whose unlawful conduct, they have a right to not be observed in the absence of a warrant. And so you'd want to step out. So there really is a different deterrence dynamic here. I'm not saying it's determinative, but you do have to take that on, don't you? Well, and it's a bit off the point to the extent that we're talking about third parties' privacy interests. That's Stiegel. Stiegel is not this case because we are not here talking about the privacy interests. We're not talking about a case in which the privacy interests of third parties have been invaded. It could also be the defendant's privacy interests. If I'm a mother and I'm about to be arrested on drug charges and my minor children are in the house, it's my privacy interests that I don't want them to witness me being taken away. I understand that, but the warrant requirement protects those interests. The warrant requirement, either you have an arrest warrant or a search warrant. The same interests are taken into consideration. It's just the fact that the search warrant permits more than an arrest warrant does. But those considerations are taken into consideration with respect to an arrest warrant, which is why Peyton says that police are authorized to enter for the limited purpose of making an arrest. Now, what Appellant is positing here today with respect to when we get to a Hudson analysis, setting aside Peyton, which we strenuously disagree with their reading of Peyton, as requiring this dialogue at the door such that, you know, the courts have long recognized how inherently dangerous an arrest situation is. And they have never required this kind of dialogue, option exchanging for an arrestee. The police are entitled to take control of the situation and take the arrestee into custody. And that's exactly what happened here. The custody situation took place right at the threshold, right where they took him down. The officer didn't go any further than that when he spotted the marijuana and smelled it. But you were going to talk about Peyton and why it's distinguishable. Take away the third-party interest. If I'm committing unlawful conduct in my home in the absence of a search warrant, I still have a reasonable expectation of privacy in my home, and they come with an arrest warrant. And, yes, the police have an interest in entering my home to the extent that they need to do that to take me into custody, but don't have an interest, a separate interest or authorization, privilege to enter the home. And so there's a concern, I guess, that felons are raising here that if the police could arrest me on the street, they'll say, oh, but let's get a warrant because we want to go see what's going on in the house. And that's a different concern from the concern in Hudson, right? Peyton is quite clear. And it says that if there's probable cause to believe that somebody has committed a felony, then it's reasonable to require the arrestee to open their doors to the police. The police are entitled to enter the home. The case law does not require the police to do a stakeout of a home for a couple of days to see if the defendant is going to step out, the arrestee is going to step out. It just doesn't require that. What about knock and announce? Isn't the point of knock and announce to get the person to come to the door and open it voluntarily? Yeah, the point of knock and announce, there are three points of knock and announce, as the Supreme Court described. One of those is preventing the destruction of property. The second is protecting life and limb from a surprised resident. And the third is just the dignity in getting dressed. It was quite clear under Hudson that there are two different interests. There's the interest protected by the warrant requirement, which are the interests that you've outlaid, and there are the interests protected by the knock and announce requirement. And those are two different interests. And so once a warrant is obtained, then we set aside those interests, unless the scope of the warrant is exceeded. This is not a case in which the scope of the arrest warrant was exceeded. They didn't go rummaging in boxes and do other things that exceeded the scope of the warrant. So those, the interests are very different, which is one of the reasons why the Supreme Court holding in Hudson is a categorical holding that you don't, the exclusionary rule does not come into play when we are simply dealing with a knock and announce violation. The Supreme Court in Hudson also pointed out how we don't want to get involved in opening the floodgates of litigation, and that's exactly what appellant is asking for here in trying to limit Peyton in a way that no court has ever done so, because now, the Supreme Court in Hudson was worried about debating what was reasonable. Now we're going to debate how long, not only how long it took to open the door, but what was said, were they aware of their choices, did the police step back so that they could step out before they then first stepped in. That's exactly the kind of second-guessing and hair-splitting litigation that the Supreme Court has recognized that we don't engage in, and we don't want officers engaged in the very risky enterprise of executing an arrest warrant to have to sit and wait too long to figure out what kind of choices they get so that they're not violating the Fourth Amendment. And so that's another substantial cost that the Supreme Court in Hudson said was too costly and not outweighed by the deterrent benefits. And as I pointed out, under Bowie, it's incorrect to say that there's a heightened deterrence here, particularly on the facts of this case, because Bowie permitted a sweep of the room immediately joining the doorway, and that's where the marijuana was. But I don't think Appellant is contesting that. I think Appellant grants that there would be protective sweep authority, but the position, as I understand it, is that knock and announce is to allow orderly execution of the arrest warrant and privacy, dignity of the individual, and in the absence of a search warrant, the intact privacy of the home, and that therefore if the arrest warrant can be executed without intrusion into the home, that that is what should happen. Hudson says that's incorrect. Hudson says that the warrant requirement covers the privacy interest you've just identified. The knock and announce requirement covers different interests, and it doesn't cover the privacy interests that are the subject of the warrant requirement. The warrant requirement takes care of that. The knock and announce rule covers different interests, and when it identified the interests that were covered by the knock and announce rule, it didn't, by the way, say the knock and announce rule also is required because we want defendants to be able to step out of their house and keep the police from entering it, and it makes sense because the warrant requirement already covers the privacy interests. It's just the arrest warrant permits a much lesser intrusion into those privacy interests than a search warrant. If there are no further questions, we'd ask that the judgment be affirmed. All right, thank you. Does Ms. Dower have any time? Why don't you take a couple minutes? Thank you very much, Judge Peterson. I just have a couple of points. One, I would say that the warrant requirement, the government says that the warrant requirement does authorize an invasion of privacy. Well, that's true for search warrants and not for arrest warrants. With respect to the protective suite, that is only authorized where the officers do have a concern for their safety, and as Judge Blair has identified, there was no such expression of concern in this case. And in terms of extending Hudson or reading Hudson differently, I would just note that Justice Kennedy's concurrence, I would point the Court to the first two paragraphs of Justice Kennedy's concurrence where Justice Kennedy does make several statements that are very broad. One is the knock-and-announce requirement protects rights and expectations linked to ancient principles in our constitutional order. As to the basic right in question, privacy and security in the home are central to the Fourth Amendment's guarantees, and it bears repeating that it is a serious matter if law enforcement officers violate the sanctity of the home by ignoring the requisites of lawful entry. If the Court has no further questions, we would ask that the case be submitted. All right, thank you. Thank you very much.
judges: Henderson, Rogers, Pillard